**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
═══════════════════════════════   )
                                   )
PHUC N. NGUYEN,                    )
                                   )
              Plaintiff,           )
                                   )  Civil Action No. 09-1349 (EGS)
         v.                        )
                                   )
RAY MABUS,[1]                      )
SECRETARY OF THE NAVY,             )
                                   )
              Defendant.           )
───────────────────────────────   )
```

**MEMORANDUM OPINION**

Plaintiff Phuc Nguyen ("Nguyen"), proceeding *pro se*, brings this action against the Secretary of the Navy, alleging discrimination on the basis of race, national origin, and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq.*, as well as discrimination on the basis of age and hostile work environment, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 631 *et seq.* Pending before the Court is Defendant's Motion for Summary Judgment. Upon consideration of the motion, the opposition and the reply thereto, the applicable law, the entire record, and for the reasons stated below, the

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Ray Mabus is substituted for the former Secretary of the Navy as the named Defendant in this case.

Court will **GRANT IN PART AND DENY IN PART** Defendant's Motion for

Summary Judgment.

**I.    BACKGROUND**

   **A.   Factual Background**

   Plaintiff Nguyen was born on July 4, 1948 in Saigon,

Vietnam.   Am. Compl. ¶ 4.   Nguyen is a GS-13 equivalent grade

engineer employed at Naval Sea Systems Command Headquarters

("NAVSEA").   Def.'s Statement of Material Facts ¶ 1 (hereinafter

"Def.'s SMF"); *see also* Def.'s Mot. for Summ. J. (hereinafter

"Def.'s MSJ"), Ex. 7, Department of Defense Office of Complaint

Investigations, Reporter's Transcript of Proceedings in the

Investigation of the Discrimination Complaint of Phuc Nguyen,

Agency Docket No. DON-05-00024-0872, Statement of Phuc Nguyen,

at 21-22 (Oct. 17, 2005) (hereinafter "2005 Transcript").

Nguyen has worked at the same pay grade since 1986, and in the

same position since 1997.   Am. Compl. ¶¶ 7, 9; *see also* 2005

Transcript at 21.   During the relevant time period, Nguyen

worked in the management group that oversees the Submarine

Sensor Program Office ("PMS 435") of the Program Executive

Officer for Submarines ("PEOSUB").   Def.'s SMF ¶ 2.   PMS 435

designs, develops, and oversees the construction of Electronic

Warfare Systems, periscopes, and the Photonics Mast.   *See* Am.

Compl. ¶ 9; Def.'s SMF ¶ 4.   Within PMS 435 are several

branches, including an Imaging Systems Branch, an Electronic

Warfare Systems Branch, and the I&EW Branch, which is headed by the Chief Engineer.  *See* Def.'s SMF ¶ 6; *see also* Def.'s MSJ, Ex. 10, 2007 Report of Investigation at 47 (hereinafter, "2007 ROI").  During the relevant time period, Nguyen worked under the Chief Engineer and had the working title of Assistant Chief Engineer.  Def.'s SMF ¶ 9; *see also* Def.'s MSJ, Ex. 8, 2005 Report of Investigation at 69 (hereinafter, "2005 ROI").

From 1997 through January 2005, Nguyen's direct supervisor was Swarn Dulai, who was the Chief Engineer in PMS 435.  Am. Compl. ¶ 10.  From 1997 through mid-2008, Paul Gross, Deputy Project Manager, was Nguyen's second level supervisor.  Am. Compl. ¶ 11.  With respect to Mr. Gross, Plaintiff alleges -- without providing any dates -- that Gross has not assigned Nguyen a major area of responsibility, despite other similarly situated engineers having clear and substantive areas of responsibility; that Gross has stripped Nguyen of substantive engineering work relegating him to assignments of stop-gap duties and responsibilities; that under Gross's leadership, Nguyen has received one performance award in contrast to regular annual awards given to similarly situated Caucasian engineers with less experience; and that Gross continues to exclude Nguyen from major acquisition program duties and responsibilities, in favor of other younger, less experienced, Caucasian engineers.  *See* Am. Compl. ¶¶ 14-17.  As to Mr. Dulai, Plaintiff alleges

that on several occasions, Dulai spoke about the Vietnam War and told Nguyen that "Vietnamese people ought to be grateful for having a job at NAVSEA." Am. Compl. ¶ 19. According to Plaintiff, Dulai also stated that, in contrast to Asians, he considered his racial identity to be more like a Caucasian person, since he is Sikh. Am. Compl. ¶ 20. Plaintiff alleges that on many occasions, Dulai mocked the accent of another Vietnamese employee. Am. Compl. ¶ 21. Finally, Plaintiff states that in late December 2004, Dulai approached Nguyen privately and threatened that the new Chief Engineer would target him with harassment. Dulai purportedly recommended that Nguyen leave the Assistant Chief Engineer position for a position outside PEOSUB, and promised that if Nguyen did so, Dulai would provide a positive reference. Am. Compl. ¶ 28.

### 1.   2005 EEO Complaint

Dulai announced his plan to retire in early 2004. Am. Compl. ¶ 18. The PMS 435 staffing charts reflect that up to Dulai's retirement, only two individuals were permanently assigned to the Chief Engineer Branch: Nguyen and Dulai. Def.'s SMF ¶ 10; *see also* Def.'s MSJ, Ex. 12. From about September 20, 2004 to September 11, 2005, Dr. Robert LaFreniere[2] was detailed to the branch from the Naval Undersea Warfare Center, Newport

---

[2]   Plaintiff alleges that LaFreniere is Caucasian and 14 years younger than Plaintiff. Am. Compl. ¶¶ 24, 27, 32.

Division, which is a field activity to NAVSEA.  Def.'s SMF ¶¶
11-12; *see also* 2005 ROI at 53; Def.'s MSJ, Ex. 12, at 4-7.
LaFreniere's working title while initially on detail was Deputy
Chief Engineer/Field Support.  Def.'s SMF ¶ 13; 2005 ROI at 69.

　　Upon Dulai's retirement on January 5, 2005, LaFreniere was
designated Acting Chief Engineer.  Def.'s SMF ¶ 14; 2005 ROI at
53.  LaFreniere served in that position until about April 2005,
when the position was permanently filled upon the selection of
Steven Stump.  *See* Def.'s SMF ¶ 14; 2005 ROI at 53.  Nguyen made
initial contact with an EEO counselor on February 11, 2005,[3]
after learning that his name had been omitted from a group award
nomination.  Def.'s SMF ¶ 15; *see also* 2005 ROI at 1, 6, 14-18,
82; 2005 Transcript at 89-91 ("I found out about this [award]
just by mere coincidence after I received an e-mail from
management showing the letter of recommendation . . . sometime
around that timeframe when I was thinking about complaining
about LaFreniere's assignment as acting chief engineer.  I saw
this e-mail, so I said this is it.  I mean this is the last
straw . . . so I need to go forward with this complaint.").

_____

[3] In Plaintiff's Amended Complaint, he alleges that he filed
his EEO complaint on January 4, 2005.  *See* Am. Compl. ¶¶ 34-35.
The record of investigation reflects that the initial contact
was made on February 11, 2005, and Plaintiff does not
subsequently dispute this.  Therefore, the Court does not
construe this as a disputed factual issue, but rather a
typographical error in Plaintiff's Amended Complaint.

In his initial EEO contact, Nguyen alleged discrimination on the basis of his race, age, national origin, and reprisal because of protected activity.  *See* Def.'s SMF ¶ 16; 2005 ROI at 15.  Nguyen alleged the following claims:

1. On February 11, 2005 he was denied recognition for his contribution to PMS 435 programs (such as initiating Patriot radar program and serving as systems engineer on it);
2. As of January 5, 2005 he was denied Chief Engineer lead systems engineering assignments;
3. As of January 2005 he was denied the Acting Chief Engineer position;
4. As of January 5, 2005 the Acting Chief Engineer excluded him from Advanced Submarine Support Equipment Program ("ASSEP") budget management deliberations;
5. As of January 5, 2005, the Acting Chief Engineer "kept [Nguyen] in the dark and excluded [Nguyen] from all his communications and meetings with coworkers, field activities and support contractors."

*See* Def.'s SMF ¶ 16; 2005 ROI at 15-16.  Nguyen also alleged the following claims in support of a "continuing hostile environment":

1. On January 5, 2005, Dulai suggested that Nguyen leave his job and look for another position to avoid future adverse action;
2. On January 5, 2005 and continuing to the present, Management continues to manipulate position qualifications and deny Nguyen's job experience to deny him assignments and advancement opportunities in favor of less experienced engineers;
3. Management encourages the community to exclude Nguyen from important program reviews, the latest of which was the ISIS kick-off meeting at Kollmorgen on February 9, 2005.

*See* Def.'s SMF ¶ 16; 2005 ROI at 15-16.

On February 17, 2005, Nguyen was given, and he initialed, a notice of his rights and responsibilities.  This notice included the requirement to contact an EEO counselor within 45 days of an alleged discriminatory action, and information on how to allege a violation of the ADEA, including use of the ADEA "bypass" provision.[4]  *See* Def.'s SMF ¶ 17; 2005 ROI at 20-29.  On March 24, 2005, Nguyen's attorney filed a formal EEO complaint alleging the same claims raised in Nguyen's initial EEO contact.  *See* Def.'s SMF ¶ 18; 2005 ROI at 2-4.

Plaintiff alleges that, on April 15, 2005, Defendant again failed to promote him to Chief Engineer; instead Defendant selected Stephen Stump, who is Caucasian and seventeen years younger than Nguyen.  Am. Compl. ¶¶ 37, 39.

## 2.   2007 EEO Complaint

In about November 2006, Stump vacated the Chief Engineer position, and the Deputy Program Manager, Paul Gross, initiated the selection process for a new Chief Engineer.  *See* Def.'s SMF ¶ 19; 2007 ROI at 130.  Gross asked Nguyen and two other

---

[4]   As an alternative to following the administrative process discussed *infra*, Part III.A.1, a federal employee may bring a claim of age discrimination directly to federal court, so long as, within 180 days of the allegedly discriminatory act, he or she provides the EEOC with notice of his or her intent to sue at least 30 days before commencing suit.  *See* 29 U.S.C. § 633a(c), (d); *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003); *see also* 2005 ROI at 27.

individuals assigned to PMS 435, Riad Sayegh[5] and Michael Patton, to update their resumes electronically, and Gross provided their names to Human Resources as individuals qualified and interested in the Chief Engineer position.  2007 ROI at 131.  Nguyen and Sayegh were the only two candidates interviewed for the position.  Def.'s SMF ¶ 20; 2007 ROI at 131.  The interview panel consisted of three individuals: Gross, Dr. Bradley Binder, and Scott Greenberg.  Def.'s SMF ¶ 21; *see also* 2007 ROI at 131.  Binder, the Chief Engineer for Surface Electronic Warfare Systems, worked outside of the Team Sub organization and had no prior knowledge of any of the applicants.  Greenberg had served as the Chief Engineer for Towed Systems.  *See* Def.'s SMF ¶¶ 22-23; 2007 ROI at 131.  The panel members reviewed Nguyen's and Sayegh's resumes and interviewed both applicants.  All three panel members believed Sayegh to be the better candidate, and he was selected for the position.  *See* Def.'s SMF ¶¶ 24-25; 2007 ROI at 132, 134, 136.

Nguyen made initial contact with an EEO counselor via email on April 24, 2007.  *See* Def.'s SMF ¶ 26; 2007 ROI at 5, 13-18.  In his initial contact, Nguyen alleged discrimination on the basis of race, national origin, age, and reprisal due to the "[c]ontinuing failures by PMS 435 to promote [Nguyen] to PMS 435

---

[5] Plaintiff alleges that Sayegh is Caucasian and twenty-four years younger than Nguyen.  Am. Compl. ¶ 42.

Chief Engineer position between Jan[uary] 2005 [and] the
present." 2007 ROI at 18.  On July 27, 2007, Nguyen filed a
formal administrative complaint, again alleging discrimination
based on Defendant's continuing failure to promote him to Chief
Engineer; in particular, Nguyen complained of his non-selection
for the Chief Engineer position on three occasions: (1) January
4, 2005, (2) April 15, 2005, and (3) March 19, 2007.  Def.'s SMF
¶ 27; 2007 ROI at 2-3.  On August 28, 2007, the EEO Officer sent
Nguyen a notice of acknowledgment for investigation and partial
dismissal.  The EEO Officer informed Nguyen that his claim of
non-selection for the Chief Engineer position on March 19, 2007
was accepted for investigation.  Def.'s SMF ¶ 27; 2007 ROI at
40.  However, Nguyen was informed that the EEO Officer was
dismissing his other two non-selection claims: the April 15,
2005 non-selection claim was dismissed for failure to contact an
EEO counselor within 45 days, and the January 2005 claim was
dismissed because the same claim was pending before an EEO
administrative judge.  *See* Def.'s SMF ¶ 27; 2007 ROI at 41-42.

### 3.  Post-April 24, 2007 Allegations

Nguyen alleges that Sayegh, as Chief Engineer, has
transferred management duties and responsibilities for the Small
Business Innovative Research ("SBIR") projects away from Nguyen.
Am. Compl. ¶ 48.  Further, Nguyen alleges that Sayegh has not
assigned new SBIR projects to Nguyen as other projects reach

their successful ends, and thus, Sayegh has virtually eliminated Nguyen's duties and responsibilities in this area.  Am. Compl. ¶ 49.  In November 2008, Nguyen was made Acting Chief Engineer.  However, according to Nguyen, Mr. Gross split the duties normally carried out by one Chief Engineer among three different Acting Chief Engineers, two of whom had not previously served under a Chief Engineer.  Am. Compl. ¶ 50.  Finally, Nguyen asserts that in November 2008, November 2009, and July 2009, Defendant failed to promote him to the high-grade PMS 435 Imaging Sensor Assistant Program Manager position; instead, Defendant selected three different Caucasian applicants who were substantially younger than Nguyen.[6]  Am. Compl. ¶¶ 51, 55-57.  Plaintiff does not dispute that he never contacted an EEO counselor or filed an EEO complaint regarding these post-April 24, 2007 allegations.

**B.   Procedural Background**

Nguyen filed his initial Complaint in this action on July 21, 2009.  He filed an Amended Complaint on December 31, 2009.  In the Amended Complaint, Nguyen alleges that Defendant's failure to promote him constitutes discrimination on the basis

---

[6] Those applicants were: Matthew Severson, who Plaintiff alleges is Caucasian and over twenty-four years younger than Plaintiff, Am. Compl. ¶ 51; Ray Desautel, who Plaintiff alleges is Caucasian and eighteen years younger than Plaintiff, *id.* ¶ 55; and Joseph Brunner, who Plaintiff alleges is Caucasian and substantially younger than Plaintiff, *id.* ¶ 57.

of race, national origin, and age, in violation of Title VII and
the ADEA.  *See* Am. Compl. ¶¶ 59-79.  In addition, Nguyen alleges
that after he contacted an EEO counselor in 2005, Defendant
retaliated against him by cutting ASSEP funding from Nguyen's
programs and continuing to prohibit Nguyen from participating in
ASSEP funding decisions, which stripped Nguyen of substantive
job responsibilities.  Am. Compl. ¶¶ 80-85.  Nguyen filed a
separate action on June 18, 2010.  Compl., *Nguyen v. Mabus*, No.
10-1030 (June 18, 2010), Docket No. 1.  The three-page complaint
in that action makes largely similar claims but provides much
less detail.  Without alleging separate causes of action,
Plaintiff claims:

> This action arises out of the Agency continually
> discriminating against Phuc N. Nguyen, based on race (Asian
> Pacific), national origin (Viet Nam), and retaliat[ing]
> against Nguyen based on prior Equal Employment Opportunity
> (EEO) activity in violation of Title VII . . . . . In
> addition, the Defendant discriminated against Nguyen and
> created a hostile work environment based on age (57 years
> as of January 2005) in violation of the [ADEA].

*Id.* at 2.  On January 4, 2011, the Court consolidated case
number 10-1030 with this action.  *See* Minute Order, *Nguyen v.
Mabus*, No. 10-1030 (Jan. 4, 2011).  On October 17, 2011,
Defendant filed a Motion for Summary Judgment.  That motion is
ripe for determination by the Court.

## II.   STANDARD OF REVIEW

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex*, 477 U.S. at 323.  In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Keyes v. Dist. of Columbia*, 372 F.3d 434, 436 (D.C. Cir. 2004).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials; rather, it must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine

issue for trial.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477
U.S. at 324.  Moreover, "although summary judgment must be
approached with special caution in discrimination cases, a
plaintiff is not relieved of [his] obligation to support [his]
allegations by affidavits or other competent evidence showing
that there is a genuine issue for trial." *Adair v. Solis*, 742
F. Supp. 2d 40, 50 (D.D.C. 2010), *aff'd*, 473 F. App'x 1 (D.C.
Cir. 2012) (internal quotation marks and citations omitted).
"The mere existence of a scintilla of evidence in support of the
[non-movant]'s position will be insufficient; there must be
evidence on which the jury could reasonably find for the [non-
movant]." *Anderson*, 477 U.S. at 252.

Where, as here, a plaintiff is proceeding *pro se*, "the
Court must take particular care to construe the plaintiff's
filings liberally, for such [filings] are held 'to less
stringent standards than formal pleadings drafted by lawyers.'"
*Cheeks v. Fort Myer Constr. Co.*, 722 F. Supp. 2d 93, 107 (D.D.C.
2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

**III. ANALYSIS**

**A.   Claims of Discrimination Under Title VII and ADEA**

**1.   Exhaustion of Administrative Remedies**

**a.   Legal Standard for Exhaustion**

Before bringing suit under either Title VII or the ADEA, an
aggrieved party is required to timely exhaust his or her

administrative remedies.  *See Harris v. Gonzales*, 488 F.3d 442,

443 (D.C. Cir. 2007); *Washington v. Wash. Metro. Area Transit

Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998).  These exhaustion

requirements are not jurisdictional, but rather operate as a

statute of limitations defense.  *Artis v. Bernanke*, 630 F.3d

1031, 1034 n.4 (D.C. Cir. 2011) (citation omitted).  "Because

untimely exhaustion of administrative remedies is an affirmative

defense, the defendant bears the burden of pleading and proving

it."  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir.

1997) (citation omitted).

An employee of the federal government who believes he or

she has been subject to discrimination is first required to

"initiate contact" with an EEO counselor within forty-five days

of the allegedly discriminatory action.  29 C.F.R. §

1614.105(a)(1); *see Steele*, 535 F.3d at 693.  The forty-five day

period begins to run when an employee has a "reasonable

suspicion" of a discriminatory action.  *Adesalu v. Copps*, 606 F.

Supp. 2d 97, 102 (D.D.C. 2009).  If the matter is not resolved

informally, the counselor shall inform the employee in writing

of the right to sue, and the employee must file a formal

complaint of discrimination with the agency.  *See* 29 C.F.R. §§

1614.105(d), 1614.106(a)-(c); *Bowie v. Ashcroft*, 283 F. Supp. 2d

25, 33 (D.D.C. 2003).  The agency must then investigate the

matter, after which the complainant may demand an immediate

14

final decision from the agency or a hearing before an EEOC
administrative judge.  *See* 29 C.F.R. §§ 1614.106(e)(2),
1614.108(f).  A complainant may file a civil action within
ninety days of receiving a final decision from the agency or
after a complaint has been pending before the EEOC for at least
180 days.  *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407;
*Price v. Bernanke*, 470 F.3d 384, 389 (D.C. Cir. 2006).

Importantly, an employee must exhaust the administrative
process for each discrete act for which he seeks to bring a
claim.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,
113-14 (2002).  In *Morgan*, the Supreme Court held that "discrete
discriminatory acts are not actionable if time barred, even when
they are related to acts alleged in timely filed charges.  Each
discrete discriminatory act starts a new clock for filing
charges alleging that act.  The charge, therefore, must be filed
within the [45]-day time period after the discrete
discriminatory act occurred."  *Id.* at 113.

### b.   Application to Plaintiff's Claims

It is undisputed that Nguyen only made contact with an EEO
counselor regarding the claims in the instant suit on two
occasions: February 11, 2005 and April 24, 2007.  Defendant thus
argues that the following acts of alleged discrimination were
not timely exhausted because they did not occur within forty-
five days of that contact:

15

1.   August 2004 Denial of Promotion to GS-14/Deputy Chief Engineer Position;
2.   December 2004 Dulai threat;
3.   April 15, 2005 Non-Selection for the Chief Engineer Position -- Steven Stump selected;
4.   November 2008 Non-Selection for Imaging Sensor Assistant Program Manager ("APM") position -- Matthew Severson selected;
5.   November 2009 Non-Selection for APM position -- Ray Desautel selected;
6.   July 10, 2009 Non-Selection for APM position -- Joseph Brunner selected;
7.   Undated ASSEP Funding Cuts.

*See* Def.'s MSJ at 12.[7]  Nguyen does not directly dispute that he failed to exhaust the above claims.  Rather, he argues that the non-exhausted claims were "part of a history of continuing discriminatory non-assignment practices and selections for

---

[7] In addition, Defendant argues that to the extent any of the acts discussed above are alleged acts of age discrimination, Plaintiff cannot avail himself of the ADEA "bypass" provision because he did not, within 180 days of the allegedly discriminatory act, file notice with the EEOC at least 30 days before commencing suit, in accordance with 29 U.S.C. § 633a. *See* Def.'s MSJ at 12.  According to Defendant, the EEOC has no record of Plaintiff filing any notice of intent to file an age discrimination claim in federal court.  *See* Def.'s MSJ at 12 (citing Def.'s MSJ, Ex. 13, Barkley Decl. ¶ 3).  In response, Nguyen argues that because he filed his two civil actions 90 days after the EEOC granted him "right to sue" on his 2005 and 2007 EEO complaints, the ADEA bypass provision was rendered moot.  Pl.'s Mem. of P&A in Opp'n to Def.'s Mot. Summ. J. at 10 ("Pl.'s Opp'n").  However, Plaintiff misunderstands that Defendant's argument regarding the ADEA bypass provision was related to all of the acts that did *not* occur within the 45-day period before the 2005 and 2007 complaints.  As discussed in more detail below, Nguyen failed to exhaust his administrative remedies for those discrete acts.  Because Nguyen never alternatively filed a notice of intent to sue with the EEOC within the requisite time period, he cannot have exhausted his administrative remedies via this route.

promotions that started in 1997 and throughout the time period between 1997 to the present[.]"  Pl.'s Opp'n at 3-4.  The Court construes this argument as a reference to the continuing violation theory.

Under that theory, a plaintiff may recover for allegedly discriminatory conduct falling outside the applicable charging period if that conduct forms part of one indivisible discriminatory practice and at least one act in furtherance of that practice took place within the applicable charging period. *See Coghlan v. Peters*, 555 F. Supp. 2d 187, 203 (D.D.C. 2008); *see also Adesalu*, 606 F. Supp. 2d at 101.  However, since the Supreme Court's decision in *Morgan*, the continuing violation theory is restricted to claims akin to hostile work environment claims because those violations -- unlike a discrete act such as firing or failing to promote an employee -- "cannot be said to occur on any particular day."  *Coghlan*, 555 F. Supp. 2d at 203 (citing *Morgan*, 536 U.S. at 115, 117).  *Morgan* makes clear that courts should not treat individual incidents of alleged discrimination as part of a discriminatory pattern for exhaustion purposes: "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice.'"  536 U.S. at 114.

17

The Court therefore finds that all of Plaintiff's non-selection/denial of promotion claims -- which include the August 2004 Denial of Promotion to GS-14/Deputy Chief Engineer Position; the April 15, 2005 Non-Selection for the Chief Engineer Position; and the November 2008, July 2009, and November 2009 Non-Selections for the Imaging Sensor APM position -- are discrete acts of alleged discrimination.  Because none of these acts occurred within forty-five days of Nguyen's EEO contact, they were not timely exhausted and they are therefore procedurally barred.[8]  The Court construes the December 2004 Dulai threat as part of Plaintiff's hostile work environment claim and therefore addresses it in Part III.C, *infra*.  Finally, because Plaintiff only alleged the issues related to ASSEP funding in the context of his retaliation claim, the Court considers those undated actions in Part III.B, *infra*. Accordingly, the only discrete claims of discrimination that Plaintiff timely exhausted are (1) the January 2005 designation of Dr. Robert LaFreniere as Acting Chief Engineer,[9] and (2) the March 19, 2007 selection of Riad Sayegh as Chief Engineer.

---

[8] In addition, Nguyen concedes that he never applied for the November 2008, July 2009, and November 2009 Imaging Sensor APM positions.  *See* Def.'s Reply, Ex. 5, Transcript of Nguyen Dep. at 122-24.  Thus, Defendant could not have discriminated against Nguyen by not selecting him for those positions.

[9] In his initial contact and formal EEO complaint in 2005, Nguyen also alleged the following claims:

2.   **Plaintiff's Discrimination Claims**

a.   **Legal Framework for Claims Under Title VII and the ADEA**

Title VII makes it unlawful for a federal government employer to discriminate "based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  The ADEA provides that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a).

In the absence of direct evidence of discrimination, Title VII and ADEA claims are assessed under the burden-shifting framework set out by the Supreme Court in *McDonnell Douglas*

---

1.   On February 11, 2005 he was denied recognition for his contribution to PMS 435 programs (such as initiating the Patriot radar program);
2.   As of January 5, 2005 he was denied Chief Engineer lead systems engineering assignments;
3.   As of January 5, 2005, LaFreniere "kept [Nguyen] in the dark and excluded [Nguyen] from all his communications and meetings with coworkers, field activities and support contractors."

2005 ROI at 15-16.  However, Nguyen has not alleged these claims, even in passing reference, in either his initial Complaint or Amended Complaint in this action, or his Complaint in case number 10-1030.  Therefore, the Court assumes that Nguyen has abandoned these claims, and alternatively, the Court finds that Nguyen has failed to allege sufficient facts to support a cause of action for discrimination based upon these claims.  *See Douglas-Slade v. LaHood*, 793 F. Supp. 2d 82, 97 (D.D.C. 2011) (finding that where plaintiff had asserted claims of race and sex discrimination in her EEO complaint but then not mentioned them in her civil complaint, the claims failed).

*Corp. v. Green*, 411 U.S. 792 (1973).  *See Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006); *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003).  Pursuant to that framework, the plaintiff has the initial burden of proving, by a preponderance of the evidence, a *prima facie* case of discrimination.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  To establish a *prima facie* case, the plaintiff must show that (1) he or she is a member of a protected class; (2) he or she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.  *See Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007); *Barnette*, 453 F.3d at 515.

Once the plaintiff has established a *prima facie* case, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the [action in question].'"  *Wiley*, 511 F.3d at 155 (quoting *Burdine*, 450 U.S. at 253).  In asserting a legitimate, non-discriminatory explanation, the defendant "need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  *Burdine*, 450 U.S. at 254 (internal citation omitted).  The burden then shifts back to the plaintiff to demonstrate that the asserted reason is pretextual.  *Id.* at 253; *Barnette*, 453 F.3d at 516.  The

plaintiff at all times retains the burden of persuasion.
*Burdine*, 450 U.S. at 253.

At the summary judgment stage, once the defendant provides
a legitimate, non-discriminatory explanation, "the district
court need not -- *and should not* -- decide whether the plaintiff
actually made out a prima facie case under *McDonnell Douglas*."
*Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C.
Cir. 2008).[10]  Rather, the sole inquiry becomes whether the
plaintiff produced "sufficient evidence for a reasonable jury to
find that the employer's asserted non-discriminatory reason was
not the actual reason and that the employer intentionally
discriminated against the [plaintiff] on [a prohibited basis]."
*Id.; see also Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir.
2009).  In other words, the *McDonnell Douglas* burden-shifting
framework essentially disappears and the only remaining issue is
whether the employer discriminated against the employee.  In
evaluating whether the plaintiff defeats summary judgment, the
Court considers all the relevant circumstances in evidence,
including the strength of the *prima facie* case, any direct
evidence of discrimination, any circumstantial evidence that
defendant's proffered explanation is false, and any properly

---

[10] Although *Brady* involved a race discrimination claim, the
D.C. Circuit also applies *Brady*'s framework to retaliation
claims, *see Jones v. Bernanke*, 557 F.3d 670, 678-79 (D.C. Cir.
2009), and to ADEA claims, *see Lurie v. Mid-Atl. Permanente Med.
Grp., P.C.*, 729 F. Supp. 2d 304, 316 n.2 (D.D.C. 2010).

considered evidence supporting the employer's case.  *See Jones*, 557 F.3d at 679.

### b.   Plaintiff's Non-Selection Claims

Nguyen alleges that Defendant's failure to select him for the Acting Chief Engineer position in January 2005 and the Chief Engineer position in March 2007 constituted discrimination on the basis of race, national origin, and age.  In particular, Nguyen alleges that he was better qualified for these positions than the individuals selected.

The law does not dictate which candidate an employer should choose when making a promotion decision.  Indeed, an "employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Burdine*, 450 U.S. at 259.  As the D.C. Circuit has stated, "[w]e have consistently declined to serve as a super-personnel department that reexamines an entity's business decisions." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006) (internal quotation marks and citation omitted); *see also Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Title VII liability cannot rest solely upon a judge's determination that an employer misjudged the relative qualifications of admittedly qualified candidates.").

In *Aka v. Washington Hospital Center*, however, the D.C. Circuit concluded that a fact-finder could infer discrimination

if the evidence showed that a reasonable employer would have found the plaintiff *significantly* better qualified for the job, and that there was other evidence calling the employer's explanation into question. *See* 156 F.3d 1284, 1294-95 (D.C. Cir. 1998).  In order to survive a motion for summary judgment, "[a] plaintiff attacking a qualifications-based explanation" may also raise an inference of discrimination by "seek[ing] to expose other flaws in the employer's explanation," including, *inter alia*, "show[ing] that the employer's explanation misstates the candidates' qualifications." *Id.* at 1295.  However, a plaintiff's subjective assessment of his own qualifications is not enough. *See Waterhouse v. Dist. of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000), *aff'd*, 298 F.3d 989 (D.C. Cir. 2002). "In a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call." *Aka*, 156 F.3d at 1294.  In order to justify an inference of discrimination, the qualifications gap must be great enough to be "inherently indicative of discrimination." *Jackson v. Gonzalez*, 496 F.3d 703, 707 (D.C. Cir. 2007) (citation omitted).

Defendant has alleged a non-discriminatory reason for each non-selection, and Plaintiff has argued that these asserted

reasons are mere pretext for discrimination.  The Court will explore each non-selection in turn.

### 1)   2005 Non-Selection

Defendant's asserted legitimate, non-discriminatory reason for its selection of Dr. LaFreniere over Nguyen for the 2005 Acting Chief Engineer position is that LaFreniere's qualifications exceeded those of Nguyen.  *See* Def.'s MSJ at 15-21.  First, Defendant states that LaFreniere's academic credentials are superior to Nguyen's because LaFreniere has a Master's degree in Mechanical Engineering and a Ph.D. in Applied Mechanics, while Nguyen holds a Bachelor's degree in Engineering Science.  *See id.* at 15.  In addition, Defendant asserts that LaFreniere had impressive program management and engineering experience, including his experience in the periscope program for ten years, two of which were as Program Manager.  *See id.* at 16-21.  According to Defendant, before LaFreniere was detailed to PMS 435, he was the Chief Engineer for the periscope program. *Id.* at 21.  In approximately August 2004, LaFreniere's supervisor nominated him for, and he was selected to receive, an accretion of duties promotion to the equivalent of GS-14.  Thus, at the time of his selection for the Acting Chief position, LaFreniere was a GS-14 grade equivalent, while Nguyen was a GS-13 grade equivalent.  *Id.* at 20.  Finally, Deputy Program Manager Paul Gross testified that Defendant appointed LaFreniere

Acting Chief Engineer over Plaintiff not only because of
LaFreniere's exceptional experience and academic credentials,
but also because "he's actually had real-life experience in the
field touching and feeling the systems that we deal with,
actually doing and developing tasking that we review here at
headquarters.  So he's actually got a lot of hands-on experience
that Mr. Nguyen doesn't have."  Def.'s MSJ at 20 (citing 2005
Transcript at 150-53).

The Court finds that Defendant has produced legitimate,
non-discriminatory reasons for the selection of LaFreniere over
Plaintiff.  *See, e.g.*, *Holcomb*, 433 F.3d at 896 (concluding that
defendant had met its burden of producing a legitimate, non-
discriminatory reason for selection of one applicant where
selecting official provided affidavit explaining that she chose
the selectee because she was more qualified for the position
than the plaintiff); *Oliver v. Napolitano*, 729 F. Supp. 2d 291,
301 (D.D.C. 2010) (finding that defendant's selection of another
employee based upon the interviewers' assessment that the other
employee was "more qualified" was a legitimate non-
discriminatory explanation).  Accordingly, Nguyen now bears the
burden of showing that "a reasonable jury could conclude from
all of the evidence that the adverse employment decision was
made for a discriminatory reason."  *Lathram*, 336 F.3d at 1088.

Nguyen argues that two issues of material fact preclude summary judgment: first, whether LaFreniere's degrees are the "right qualifications" for the Chief Engineer position; second, whether the nature and extent of LaFreniere's management experience, "exists and is suitable for the Chief Engineer position."[11]  Pl.'s Opp'n at 11.

With respect to the first issue, Nguyen argues that LaFreniere's degrees in mechanics and mechanical engineering are "not suitable for the PMS 435 Chief Engineer position because the degrees are in a totally different field of engineering from 'knowledge of the theories and practices of electrical engineering'[] that is required for managing antennas, electrical systems, and electronic receivers and systems, under PMS 435 Chief Engineer's cognizance."  *Id.*  Nguyen produces no evidence to support his conclusory assertions that LaFreniere's

---

[11] Plaintiff also points to a third purported issue of material fact: "whether 'outstanding interpersonal communication' claimed for LaFreniere is business necessity or nothing more than a pretext for discrimination against a non-native English speaker like Plaintiff."  Pl.'s Opp'n at 11. Because Defendant never contended that LaFreniere's "outstanding interpersonal communication" was the reason for LaFreniere being designated Acting Chief Engineer, the Court need not address this argument.  Defendant did provide the testimony of Mr. Gross, who opined that LaFreniere was a very good manager, while Plaintiff was only an average manager.  Def's MSJ at 20 (citing 2005 Transcript at 151).  However, Defendant did not purport to base its selection on LaFreniere's or Nguyen's management skills.  Nor has Plaintiff submitted evidence demonstrating or even raising an inference that Gross's evaluation of their relative management skills was false or pretextual.

degrees are not suitable, and therefore the Court finds that Nguyen has not raised a genuine issue of fact regarding LaFreniere's academic credentials.[12]  *See Hastie v. Henderson*, 121 F. Supp. 2d 72, 77 (D.D.C. 2000), *aff'd*, No. 00-5423, 2001 WL 793715 (D.C. Cir. 2001) ("To defeat a motion for summary judgment, a plaintiff cannot create a factual issue of pretext with mere allegations or personal speculation, but rather must

---

[12] Nguyen also contends that Defendant has misstated his academic credentials:

> Contrary to Defendant's erroneous claim for the purpose of trivializing Plaintiff's academic education in comparison with that of LaFreniere, . . . Plaintiff holds a professional Bachelor of General Engineering (which is, in the strictest sense of the term, well-rounded multiple engineering discipline training) from Dartmouth College (Graduate) Thayer School of Engineering since May 1978. Thayer School's Bachelor of General Engineering degree requires schooling in Mathematics, Physics, Mechanical and Electrical Engineering disciplines in the undergraduate curriculum, and is conferred as a graduate diploma only to graduate students having held a Bachelor of Arts majoring in Engineering Sciences.

Pl.'s Opp'n at 18.  Plaintiff provides no evidence that his degree, which he himself characterizes as a Bachelor's degree, is equivalent to a graduate degree.  The Court therefore cannot discern any way in which Defendant made a misstatement when it asserted that Nguyen holds a Bachelor's degree.  The Court also finds no basis for concluding that Defendant's comparison of Nguyen's degree with LaFreniere's was "for the purpose of trivializing" Plaintiff's academic credentials or in any other way improper.  The Court has no doubt that Mr. Nguyen is highly educated; that he does not possess a Master's or Doctorate degree, however, appears to be undisputed.  *See* Def.'s MSJ at 15; 2007 ROI at 114-16 (Nguyen's Resume).

point to 'genuine issues of material fact in the record.'"
(citation omitted)).

As to the second issue, Nguyen argues that LaFreniere's
mechanical engineering management experience is "not the same as
management of electronic or electrical systems.  LaFreniere
cannot claim to have extensive experience in electronics program
management[.]"  Pl.'s Opp'n at 12.  Defendant provided an
explanation for why it believed LaFreniere's mechanical
engineering background did not limit his ability to be Acting
Chief Engineer:

> [I]f you look at his experience, a lot of the systems that
> we deal with are mechanical engineering-type systems.
> Periscopes are highly mechanical; they require an
> understanding of optical systems, digital electronics and
> digital cameras, hydraulics, material sciences. . . . So he
> has an extensive amount of experience and training in these
> areas.  So I don't think that was limiting factor.  He had
> experience in [] electronic warfare, although not as
> extensive as Mr. Nguyen.  But he had practical experience
> because of his experience with the imaging systems that we
> deal with.

Def.'s MSJ at 20-21 (citing ROI Transcript at 152-53).  The
Court will not second-guess Defendant's conclusion that
LaFreniere's mechanical engineering experience was relevant and
sufficient for the Acting Chief Engineer position.  An agency's
"decision not to consider certain qualifications . . . while
emphasizing other qualifications, such as hands-on experience,
when ranking candidates is within its discretion.  Even if a
court suspects that a job applicant was victimized by poor

selection procedures, which is not the case here, it may not second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Madan v. Chow*, No. 02-2016 (ESH), 2005 WL 555414, *6 (D.D.C. Mar. 8, 2005) (citing *Fischbach*, 86 F.3d at 1183).  Nguyen has failed to present any evidence that Defendant's preference for LaFreniere's professional experience was pretextual.

In this regard, Nguyen also argues that Defendant misstated LaFreniere's professional experience, *see* Pl.'s Opp'n at 24-28; Pl.'s Statement of Genuine Issues ¶¶ 22-23, but Nguyen has not provided any evidentiary support for these assertions.[13]

---

[13] Nguyen purports to cite to several documents to support these misstatements.  *See, e.g.*, Pl.'s Opp'n at 27 ("Defendant made yet another false claim for LaFreniere's 'involvement . . . with multi-discipline engineering teams and managers, . . . in [producing] composite materials required for the Submarine Satellite Information eXchange System (SSXIS) antenna . . . and [delivering] the SSXIS antenna[.]'  SSIXS [sic] is NOT an antenna, according to a retired SPAWAR communication U.S. Navy officer and a retired U.S. submarine radio man. E-mail to Plaintiff dated Nov 3, 2011 on the subject SSXIS.  Furthermore, an antenna cannot be made of composite materials. Canceled ECP No. N18-277, Title: Type 18B Periscope Set with ADF Installed, SSIXS Implementation, dated 94-12-30."); *id.* at 28 ("To show that LaFreniere had prior experience managing Imaging sensors, Defendant also made the false claim that LaFreniere was the 'chief engineer' of an Office of Naval Intelligence-classified Imaging 'Top Gate' program. . . .  Actually, Top Gate is NOT a classified PROGRAM managed or engineered by LaFreniere.  ONI's Topgate project is a 'Vision 1' camera-and-WIN-NT workstation system put 'on board' by APL for ONI without LaFreniere['s] involvement, much less management.  Meeting minutes at ONI-34 of 19 January 2000. Plaintiff was an attendee at this meeting but not LaFreniere.  LaFreniere's OPF SF52 Request for Personnel Action.").  However, Nguyen did not attach the documents he

Plaintiff's mere assertions that Defendant made false claims --
with no support for his assertions -- is insufficient under Rule
56(c)(1) to raise a genuinely disputed factual issue.  *See*
*Hastie*, 121 F. Supp. 2d at 77.  Nguyen has therefore not raised
a genuine issue of material fact as to whether LaFreniere's
experience "exist[ed]" or was suitable for the Acting Chief
Engineer position.  Even if Defendant had misstated LaFreniere's
experience, Plaintiff "cannot create a genuine issue for trial
by demonstrating that only one of [Defendant's] reasons for
[his] non-[selection] was false; []he can only create a genuine
dispute if []he can make this demonstration with respect to all
of [Defendant's] reasons."  *Hicks v. Gotbaum*, 828 F. Supp. 2d
152, 162 (D.D.C. 2011).

Nguyen also points to the fact that LaFreniere "competed
for the same position" in April 2005 but was not selected, in
favor of "another 39 year old Caucasian who is less degreed and

---

purports to rely on or provide any guidance as to their location
in the record; the Court was unable to locate the documents on
its own.  This does not comport with Local Civil Rule 7(h)(1),
which requires that "[a]n opposition to [a motion for summary
judgment] shall be accompanied by a separate concise statement
of genuine issues setting forth all material facts as to which
it is contended there exists a genuine issue necessary to be
litigated, which shall include references to the parts of the
record relied on to support the statement."  LCvR 7(h)(1).
Moreover, it is incumbent on the nonmovant who asserts such a
fact to provide depositions, affidavits, or other competent
evidence in support of the factual assertion if he is to defeat
summary judgment.  The Court advised Plaintiff as much in its
Order directing Plaintiff to respond to Defendant's Motion for
Summary Judgment.  *See* Order (Oct. 18, 2011), Docket No 36.

less experienced than himself" (Stephen Stump).  Pl.'s Opp'n at
13.  Nguyen thus contends that another issue of fact is whether
the selection criteria were changed for the same position
between August 2004 and January 2005.  *Id.*  Nguyen points to no
evidence from which the Court can infer that Defendant altered
the selection criteria for the Acting Chief Engineer or Chief
Engineer positions at any time.  Furthermore, the Court is
unable to draw an inference that the selection criteria for the
two positions were ever the same, such that the fact that
LaFreniere was selected Acting Chief, but then not selected
Chief Engineer, would raise an inference of pretext.  Nguyen's
mere conclusory allegation that the selection criteria were
altered -- with no support for the statement -- is insufficient
to raise a genuine issue of fact regarding the selection
criteria or Defendant's alteration thereof.

Furthermore, Nguyen's conclusory assertion that
LaFreniere's non-selection for the Chief Engineer position in
April 2005 raises an inference that his prior selection for
Acting Chief was pretextual is not supported by the record.
According to Defendant, the panel that ranked candidates for the
April 2005 selection "scored Plaintiff's application (with 25
out of 40 points) lower than LaFreniere's (with 33 out of 40
points)."  Def.'s Reply at 9.  The interview panel thus found
the top candidates to be LaFreniere and Stephen Stump.  *Id.*  The

31

fact that LaFreniere was selected as Acting Chief Engineer but was later not selected as Chief Engineer does not raise a genuine issue of material fact as to whether Defendant's selection of LaFreniere for Acting Chief over Nguyen was pretextual.[14]

Finally, Nguyen argues at length that he was better qualified than LaFreniere because he has more extensive academic and professional training, the requisite professional experience, and actual accomplishments for performing the duties and responsibilities of Chief Engineer. *See* Pl.'s Opp'n at 16-34. In order for Nguyen to raise an inference of discrimination on this basis, however, he must demonstrate that he was "substantially more qualified" than LaFreniere. *Holcomb*, 433 F.3d at 897; *see also Aka*, 156 F.3d at 1299. In *Aka*, for

---

[14] Nguyen alleges that "[a]nother issue of fact" is that "Defendant never entrusted budget management to Plaintiff but it did [to] LaFreniere . . . ." Pl.'s Opp'n at 12. It is unclear how this issue is a disputed issue of fact that is material to Plaintiff's discrimination claim. It appears that Plaintiff and Defendant do not dispute that Nguyen was not responsible for budget management because that responsibility belonged to the Chief Engineer, or Acting Chief Engineer. *See* 2005 ROI at 54 ("The overall budgetary management of the ASSEP program is the responsibility of the Chief Engineer. . . . The overall management of these efforts was not the responsibility of Mr. Nguyen."); 2005 Transcript at 42-45 (NGUYEN: "The ASSEP program budget is a key component of the chief engineer's responsibilities and functions."). Nguyen may have believed that he was capable of performing budget management; however, that he was not given this responsibility is not a disputed issue of fact or an allegation that would raise an inference of pretext on the part of Defendant.

example, the D.C. Circuit determined the evidentiary record was sufficient for a reasonable jury to conclude that the plaintiff, who was denied a pharmacy technician job, was "markedly more qualified" than the applicant selected.  156 F.3d at 1299. There, the plaintiff had presented undisputed evidence that he had nineteen years of experience as a hospital assistant as well as Bachelor's and Master's degrees; the other applicant did not have a college degree, had worked in the hospital laundry for slightly over a year, and had spent only two months as a pharmacy volunteer.  *Id.* at 1295-96.  Here, Plaintiff extensively details his own experience and, as noted above, avers that LaFreniere's experience was overstated or misstated by Defendant.  *See* Pl.'s Opp'n at 16-34.  However, "plaintiff's perception of [him]self," and of his qualifications, "is not relevant.  It is the perception of the decisionmaker which is relevant."  *Waterhouse*, 124 F. Supp. 2d at 7 (internal citation and quotation marks omitted).

Even viewing all of the evidence in the light most favorable to Nguyen, the Court is not persuaded that Nguyen was substantially better qualified than LaFreniere.  Plaintiff's resume reflects that he began employment at NAVSEA in 1983, *see* 2007 ROI at 115, while Dr. LaFreniere has been employed at the Naval Undersea Warfare Center ("NUWC") since 1985, with the exception of two years in private industry, *see* Def.'s MSJ, Ex.

33

17, LaFreniere Decl. ¶¶ 5,8.  As noted above, Plaintiff holds a

Bachelor's degree in General Engineering, while LaFreniere holds

a Master's and Ph.D. in Mechanical Engineering.  Finally,

Plaintiff has approximately twelve years of experience on the

Sea Wolf program and approximately five years serving as the

Assistant Chief Engineer in PMS 435, *see* Pl.'s Statement of

Genuine Issues ¶ 20, while LaFreniere has approximately seven

years' experience as an Engineering Program Manager in NUWC and

approximately five years of experience as the Program Manager

and Chief Engineer of the Night Owl program, *see* Def.'s MSJ at

16-20.  Although the Court does not doubt that Nguyen's

qualifications are impressive, Nguyen has failed to demonstrate

that he was substantially more qualified than LaFreniere to

allow a jury to infer discrimination.  *Cf. Holcomb*, 433 F.3d at

897-98; *Stewart v. Ashcroft*, 352 F.3d 422, 429-31 (D.C. Cir.

2003).  Moreover, Nguyen has provided no evidentiary support for

his assertions that Defendant misstated either Nguyen's or

LaFreniere's qualifications.  Therefore, the Court concludes

that Nguyen has not produced sufficient evidence to satisfy his

burden of showing that Defendant's asserted reasons for its

selection of LaFreniere were pretext.

### 2)   2007 Non-Selection

Nguyen also alleges that he was better qualified for the

Chief Engineer position than Riad Sayegh, and that Defendant's

failure to select him was discriminatory.  Defendant argues,
however, that its legitimate, non-discriminatory reason for
selecting Sayegh is that the interview panel believed Sayegh to
be the better qualified candidate.  *See* Def.'s MSJ at 21-29.
Defendant asserts that a selection panel, composed of Gross and
two individuals outside of PMS 435, Dr. Binder and Mr.
Greenberg, reviewed the applications of five eligible candidates
and rated Nguyen and Sayegh as the top two candidates based on
their resumes.  *Id.* at 24 (citing 2007 ROI at 117-19).[15]
Nguyen's total rating was 11.5, while Sayegh's total rating was
11.75.  *Id.* (citing 2007 ROI at 117-18).  The panel then
interviewed both Nguyen and Sayegh on the same day and asked the
two candidates the same six interview questions.  *Id.* at 24-25
(citing 2007 ROI at 118, 131).[16]  Based on the applications and

---

[15] The Knowledge and Skills used by the panel to rank the
candidates' applications were:

1.  Knowledge of Submarine Electronic Warfare technology
    and systems;
2.  Knowledge of Imaging and Electronic Optics Systems;
3.  Knowledge of Systems Engineering and Test & Evaluation
    processes;
4.  Ability to manage R&D projects;
5.  Ability to develop specification.

2007 ROI at 118.

[16] Those questions were as follows:

1.  After reading the brief description of the vacant
    Imaging and EW Chief Engineer position, please
    describe how you are qualified to perform the duties?

the interviews, the panel unanimously recommended selecting

Sayegh.  The panel explained their selection as follows:

> During the interview Mr. Sayegh demonstrated a broad
> understanding of both I&EW systems and their acquisition.
> He provided examples of current work experience that were
> relevant and germane to skills he would have to use as the
> I&EW Chief Engineer (CE) whereas Mr. Nguyen provided
> examples that were dated and not as relevant to the CE
> position. Mr. Sayegh provided examples of his understanding
> of the Systems Engineering process and its importance in
> the acquisition and the life cycle management of systems.
> He also has in depth experience in acquiring software and
> managing it over its life cycle. Mr. Nguyen didn't provide
> good examples of his understanding of the Systems
> Engineering process and didn't appear to have as good an
> understanding and experience with the processes as Mr.
> Sayegh. He also didn't mention any experience he had in
> acquiring and managing software. . . . Mr. Sayegh also
> demonstrated experience managing both the imaging and EW
> upgrade and improvement R&D efforts for Photonics. Mr.
> Sayegh and Mr. Nguyen both have knowledge and experience in
> managing submarine I&EW technology. Overall, Mr. Sayegh on
> both his resume and during the interview demonstrated

---

> Why do you think you have the ability to lead and
> coordinate the activities of a diverse group of
> government and industry personnel?
>
> 2. Please describe what experience you have in the
>    financial management and contracting process. What
>    functions have you performed during your career and
>    what have been your roles in planning and executing
>    financial management and the contracting process?
>
> 3. Do you have any experience in the systems engineering
>    discipline, including software acquisition and
>    management processes? If so, explain.
>
> 4. What relevant knowledge of submarine modernization and
>    life cycle management do you possess?
>
> 5. Please explain the role of the systems engineer within
>    the Program Office.
>
> 6. Do you have a TS security clearance? If not, is there
>    anything in your background that would prevent you
>    from obtaining a TS security clearance?

2007 ROI at 118.

broader and more in depth experience in the skills required
to perform the job.

2007 ROI at 119.  Mr. Greenberg, one of the panel members,

specifically stated:

> During the interviews, I remember Mr. Nguyen's answers were
> very good, but Mr. Sayegh's were outstanding. For instance,
> Mr. Sayegh handled research and development programs
> applicable to the Chief Engineer position and understood
> how those responsibilities fit into the overall program. .
> . . Mr. Sayegh had managed a research and development
> program within PMS 435. I don't remember Mr. Nguyen
> explaining his research and development experience
> applicable to PMS 435. In addition, Mr. Sayegh's responses
> to interview question four were plainly superior.
> Specifically, Mr. Sayegh described in detail his experience
> with the Virginia class submarine. The Virginia class
> submarine program is of particular importance to the Navy
> and plays a pivotal role in the future of undersea warfare.
> By contrast, Mr. Nguyen described his experience with the
> Seawolf class submarine. This description was helpful, but
> Seawolf class submarines were delivered in the late 1990s.
> Because Mr. Sayegh's response discussing the Virginia class
> submarine program was especially current demonstrating an
> understanding of the modernization process employed by the
> program, I found his experience more applicable to the
> Chief Engineer position.

2007 ROI at 136.

The Court concludes that Defendant provided legitimate,

non-discriminatory reasons for its selection of Sayegh over

Nguyen.  *See, e.g.*, *Holcomb*, 433 F.3d at 896; *Oliver*, 729 F.

Supp. 2d at 301-03 (finding that defendant's selection of other

employees for two vacancies based upon the interviewers'

assessment that the other employees performed better in the

interview was a legitimate non-discriminatory explanation).

Therefore, Nguyen now has the burden of demonstrating that this explanation was pretextual.

Similar to his arguments regarding LaFreniere, Plaintiff argues that Sayegh was not qualified for the Chief Engineer position because he is a mechanical engineer by training and does not have sufficient relevant experience.  *See* Pl.'s Opp'n at 34-43.  However, Nguyen has not provided the Court with any evidentiary support for his assertions, and therefore, the Court finds that he has not demonstrated that either of these issues are genuine issues of material fact that would bar summary judgment.[17]  Moreover, as the Court noted above, an employer is afforded discretion to choose between equally qualified applicants, and the Court should not second-guess an employer's personnel decision absent a demonstrably discriminatory motive. *See Barnette*, 453 F.3d at 517 ("[C]ourts must defer to the employer's decision as to which qualities required by the job . . . it weighs more heavily."); *Fischbach*, 86 F.3d at 1183; *Reshard v. Peters*, 579 F. Supp. 2d. 57, 71 (D.D.C. 2008). Indeed, Defendant provided testimony that the panel who

---

[17] Nguyen also contends -- without support -- that Defendant cannot justify having scored Sayegh higher than Nguyen based on the factors it listed for consideration of candidates.  Pl.'s Opp'n at 41-42.  However, Nguyen's subjective assertion that he should have been rated higher than Sayegh, without more, does not provide sufficient evidence from which the Court could infer that this rating was pretext for discrimination.

interviewed Sayegh believed he had more than sufficient relevant experience.  *See* Def.'s MSJ at 25-26 ("[Sayegh] provided examples of current work experience that were relevant and germane to skills he would have to use as the I&EW Chief Engineer . . . . He also has in depth experience in acquiring software and managing it over its life cycle. . . . Mr. Sayegh also demonstrated experience managing both the imaging and EW upgrade and improvement R&D efforts for Photonics.").  Nguyen therefore has not demonstrated a genuine issue of material fact as to Sayegh's qualifications or experience.

Nguyen also argues generally that he was more qualified than Sayegh because he had extensive R&D management experience and training.  *See* Pl.'s Opp'n at 34-41.[18]  Again, however, Nguyen has offered nothing more than his own subjective assertions, which are insufficient to demonstrate that he was significantly better qualified than Sayegh.  Even viewing the evidence in the light most favorable to Nguyen, the Court cannot conclude that Nguyen was significantly better qualified than Sayegh.  Defendant asserts that Sayegh has a Master's Degree in

---

[18] Nguyen also asserts that Sayegh failed to meet the requirement of membership in the Defense Acquisition Professional Corps ("APC") and was thus not qualified for the Chief Engineer position.  *See* Am. Compl. at ¶¶ 43-45.  However, Sayegh has been a member of the Defense Acquisition Corps, formerly the APC, since March 15, 2007.  Def.'s MSJ, Ex. 18, Sayegh Decl. ¶ 7.

Mechanical Engineering, as compared to Nguyen's Bachelor's degree.  *See* Def.'s MSJ at 22.  In addition, despite the fact that Nguyen has more total years of experience than Sayegh, Defendant provided evidence that Sayegh had more relevant recent experience, including with the Virginia class submarine program. *See id.* at 22-26; 2007 ROI at 136.  Finally, the interview panel contemporaneously rated Sayegh's relevant knowledge and skills the highest of all of the applications.  *See* Def.'s MSJ at 24.

At best, the evidence demonstrates that Nguyen was merely one of several qualified candidates for the job, and not that he was substantially more qualified than Sayegh.  *See Ford v. Mabus*, 629 F.3d 198, 202-03 (D.C. Cir. 2010) (concluding that despite having twenty more years of experience, plaintiff had not demonstrated that he was significantly better qualified than the selected candidate in order to raise an inference of age discrimination); *Jackson*, 496 F.3d at 708-09 (affirming grant of summary judgment for the defendant because the plaintiff and the selectee were both qualified for the promotion and there was no evidence that the plaintiff was a "discernibly better" candidate than the selectee).  Accordingly, the Court concludes that Nguyen has not met his burden of producing evidence upon which a reasonable fact-finder could conclude that Defendant's preference of Sayegh's qualifications and interview performance was mere pretext for discrimination.

### B.    Retaliation Claims

Nguyen has alleged that Defendant retaliated against him in two different ways: (1) following his 2005 EEO complaint, Defendant began to cut ASSEP funding from Nguyen's programs and continued to prohibit him from participating in ASSEP funding decisions, *see* Am. Compl. ¶¶ 83-85; and (2) Defendant failed to select Nguyen for the Chief Engineer position in April 2005 soon after his February 2005 EEO contact, *see* Compl., No. 10-1030, at ¶¶ 6-7.[19]

Employers are forbidden "from discriminating against an employee or job applicant because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (internal alterations and quotation marks

---

[19] Defendant construes Plaintiff's Complaint in case number 10-1030 as alleging that Plaintiff's non-selection as Acting Chief Engineer in January 2005 was retaliation based upon Plaintiff's EEO activity in approximately 1997 or 1998.  *See* Def.'s MSJ at 13-14.  The Court finds no basis for construing Plaintiff's Complaint to make this allegation.  Indeed, the Complaint specifically states that Defendant "continued to deny Nguyen GS-14 position shortly *after* Nguyen contested Defendant's decision to appoint LaFreniere to the Acting PMS 435 Chief Engineer in an EEO complaint . . . . On April 15, 2005, Agency again failed to promote Nguyen to GS-14 and PMS 435 Chief Engineer position after his EEO complaint of January 5, 2005."  Compl., No. 10-1030, at ¶¶ 6-7 (emphasis added).  Therefore, the Court need not address Defendant's argument that Plaintiff cannot establish a *prima facie* case of retaliation concerning the selection of LaFreniere as Acting Chief Engineer.

omitted); *see also* 42 U.S.C. § 2000e-3(a).  The same ban on
retaliation applies under the ADEA. *Gomez-Perez v. Potter*, 553
U.S. 474, 479, 491 (2008).  Retaliation claims also follow the
*McDonnell Douglas* framework set forth above, whereby the
plaintiff must first establish a *prima facie* case of
retaliation; the defendant must then articulate a legitimate,
non-discriminatory reason for its action; and the plaintiff must
then demonstrate that this explanation is mere pretext.  *See
Jones*, 557 F.3d at 677.  To establish a *prima facie* case of
retaliation, the plaintiff must show that (1) he engaged in
statutorily protected activity; (2) he suffered a materially
adverse action by his employer; and (3) a causal connection
existed between the two.  *Id.; see also Tomasello v. Rubin*, 167
F.3d 612, 619 (D.C. Cir. 1999) ("[T]he test for determining
retaliation under the ADEA and Title VII is identical").  A
plaintiff has engaged in a protected activity if he or she has
"opposed any practice made an unlawful employment practice" by
Title VII or the ADEA.  *Gilbert v. Napolitano*, 670 F.3d 258, 262
(D.C. Cir. 2012).  Filing a formal complaint of discrimination
constitutes a protected activity.  *See Holcomb*, 433 F.3d at 902.

### 1.    Exhaustion

As noted *supra*, Part III.A.1, after the Supreme Court's
decision in *Morgan*, this Court has required plaintiffs to
exhaust their administrative remedies with respect to each

discrete act of discrimination.  Several courts in this
District, however, have distinguished retaliation claims that
arise after a plaintiff has filed an administrative complaint,
holding that separate exhaustion is not required for those later
acts of retaliation that would have come within the "scope of
any investigation that reasonably could have been expected to
result from [the] initial [administrative] charge of
discrimination." *Hazel v. Wash. Metro. Area Transit Auth.*, No.
02-1375, 2006 WL 3623693, *8 (D.D.C. Dec. 4, 2006) (relying on
*Wedow v. Kansas City*, 442 F.3d 661, 673-74 (8th Cir. 2006) and
*Lane v. Hilbert*, No. 03-5309, 2004 WL 1071330, *1 (D.C. Cir. May
12, 2004)); *see also Jones v. Bernanke*, 685 F. Supp. 2d 31, 37
(D.D.C. 2010); *Thomas v. Vilsack*, 718 F. Supp. 2d 106, 121
(D.D.C. 2010); *Smith-Thompson v. Dist. of Columbia*, 657 F. Supp.
2d 123, 137 (D.D.C. 2009); *Lewis v. Dist. of Columbia*, 535 F.
Supp. 2d 1, 6-8 (D.D.C. 2008).[20]  The D.C. Circuit has declined
to weigh in on this split.  *See Payne v. Salazar*, 619 F.3d 56,
65 (D.C. Cir. 2010) ("We need not decide whether *Morgan* did in
fact overtake that line of cases [that permits federal employees

---

[20] *But see Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139,
148-49 (D.D.C. 2005) (requiring plaintiffs to separately exhaust
every discrete act of discrimination or retaliation regardless
of whether it was "like or reasonably related" to claims in the
administrative complaint); *Coleman-Adebayo v. Leavitt*, 326 F.
Supp. 2d 132, 137-38 (D.D.C. 2004)(dismissing post-
administrative complaint retaliation claim where the plaintiff
failed to exhaust).

to litigate unfiled retaliation claims that are like or reasonably related to claims they did file with the agency]."). The courts in this District that have followed this line of reasoning have required claims of retaliation to be administratively exhausted *unless* they were (1) related to the claims in the initial administrative complaint, and (2) specified in that complaint to be of an ongoing and continuous nature. *See, e.g.*, *Thomas*, 718 F. Supp. 2d at 121; *Lewis*, 535 F. Supp. 2d at 7-8.  Because exhaustion of administrative remedies is an affirmative defense, Defendant bears the burden of pleading and proving it. *Bowden*, 106 F.3d at 437.  Notably, Defendant does not address the relevant split in legal authority whatsoever.

With respect to Nguyen's claim regarding ASSEP funding issues, Defendant argues that Nguyen did not make any contact with an EEO counselor regarding ASSEP funding cuts in either his 2005 or 2007 EEO complaints. *See* Def.'s MSJ at 29; *see also* Def.'s MSJ, Ex. 16, Dyson Decl. ¶ 7.  In his February 2005 EEO contact, however, Plaintiff alleged that "[a]s of 5 Jan 2005 and continuing to present the de facto new Chief Engineer excluded me from ASSEP budget management deliberations/decisions in favor of support contractors and other co-workers, and reduced me to an outsider's role."  2005 ROI at 16.  These allegations are not substantially similar to the claim that Defendant cut ASSEP

funding to Nguyen's programs, but they are similar to his allegation that Defendant continued to exclude him from ASSEP funding decisions.  In addition, they are clearly specified to be of an ongoing and continuous nature.

Defendant does not address Nguyen's April 2005 non-selection claim, and for this reason alone, the Court finds that Defendant has not met its burden of proving that Plaintiff failed to exhaust this claim.  Even had Defendant addressed this claim, the Court finds that it is at least plausible that the April 2005 non-selection claim is sufficiently related to the claims in Nguyen's 2005 administrative complaint that Defendant had denied Nguyen the Acting Chief Engineer position.  *See Hazel*, 2006 WL 3623693, at *8 (finding that allegations of two subsequent retaliatory non-selections and termination were of a similar kind to the history of harassment and discrimination alleged in the EEO charges, which included a retaliatory non-selection and attempts to set the plaintiff up for termination).  In addition, Nguyen's initial EEO complaint specified that his non-selection claim was continuous and ongoing.  *See* 2005 ROI at 16 ("As of January 2005 and continuing to Present, PMS 435 denies me the Acting Chief Engineer position . . . .").  It is therefore plausible that Nguyen's non-selection claim would have fallen within the scope of the investigation that reasonably

could have been expected to result from Nguyen's initial charge
of discrimination.

Accordingly, Defendant has not met its burden of proving
that Plaintiff failed to exhaust his administrative remedies
related to his two retaliation claims.

### 2.   Plaintiff's Claims

#### a.   Cuts to ASSEP Funding and Exclusion from Funding Decisions

Even assuming Nguyen exhausted his claim regarding cuts in
ASSEP funding and his exclusion from ASSEP funding decisions, he
has not established a *prima face* case of retaliation regarding
these purported actions.  Although it is undisputed that Nguyen
engaged in a protected activity when he filed his 2005 EEO
complaint, Nguyen has not demonstrated that the actions related
to ASSEP funding were materially adverse.

Under the Supreme Court's decision in *Burlington*, a
materially adverse action in the retaliation context is one that
could "dissuade a reasonable worker from making or supporting a
charge of discrimination."  548 U.S. at 57; *see also Steele*, 535
F.3d at 696.  Thus, the term "adverse action" in the retaliation
context "encompass[es] a broader sweep of actions than those in
a pure discrimination claim."  *Baloch v. Kempthorne*, 550 F.3d
1191, 1198 n.4 (D.C. Cir. 2008).  The D.C. Circuit has, however,
established some limits to what constitutes an adverse

employment action.   Although "'purely subjective injuries,' such

as dissatisfaction with a reassignment, public humiliation, or

loss of reputation, are not adverse actions, the threshold is

met when an employee 'experiences materially adverse

consequences affecting the terms, conditions, or privileges of

employment or future employment opportunities such that a

reasonable trier of fact could find objectively tangible harm.'"

*Holcomb*, 433 F.3d at 902 (quoting *Forkkio v. Powell*, 306 F.3d

1127, 1130-31 (D.C. Cir. 2002)).

In *Holcomb*, the D.C. Circuit concluded that the plaintiff

had suffered an objectively tangible harm where, even though she

never suffered a reduction in grade, pay, or benefits, she

experienced:

> [A]n extraordinary reduction in responsibilities that
> persisted for years . . . .   The record includes
> uncontroverted testimony that her duties dramatically
> declined in both quantity and quality.   Most tellingly, the
> . . . desk audit revealed [plaintiff] was performing tasks
> commensurate with a Grade 5 position -- six grades below
> [plaintiff's position].

433 F.3d at 902.   Here, Nguyen alleges that following his

protected activity, he suffered cuts to ASSEP funding, and

Defendant "continu[ed]" to prohibit him from participating in

ASSEP funding decisions, which stripped him of substantive job

responsibilities.   Am. Compl. ¶¶ 83-85.   These allegations are

not sufficient to rise to the level of a materially adverse

action like the one found in *Holcomb*.   First, there is no

indication from the record that Defendant ever made any cuts to the funding of Nguyen's programs whatsoever or excluded him from funding decisions.  Nor does Nguyen allege that the purported cuts to ASSEP funding or exclusion from funding decisions led to any material changes in the terms, conditions, or privileges of his employment or future employment opportunities.  Indeed, Nguyen appears to have conceded that ASSEP funding decisions were the responsibility of the Chief Engineer, not the Assistant Chief Engineer.  *See* 2005 Transcript at 42-45 (NGUYEN: "The ASSEP program budget is a key component of the chief engineer's responsibilities and functions.").  Nguyen has therefore not shown how the purported cuts to ASSEP funding and exclusion from funding decisions amounted to a tangible harm to his employment that would have dissuaded a reasonable worker from making a charge of discrimination.

Accordingly, the Court concludes that Nguyen has not succeeded in establishing a *prima facie* case of retaliation on this claim.

### b.   Non-selection for Chief Engineer, April 2005

It is undisputed that Nguyen engaged in a protected activity when he filed his EEO complaint.  In addition, Nguyen's non-selection for the Chief Engineer position constitutes a materially adverse action.  *See Stewart*, 352 F.3d at 427 ("[F]ailing to select an employee for a position with

substantially greater supervisory authority is an adverse employment action."); *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (holding that refusal to allow employee to compete for higher level Director position constituted materially adverse action).  In order to establish a *prima facie* case then, Nguyen must finally demonstrate that his non-selection for Chief Engineer in April 2005 was causally connected to his protected EEO activity.

A causal connection may be established by showing that "the employer had knowledge of the employee's protected activity, and . . . the adverse personnel action took place shortly after that activity." *Holcomb*, 433 F.3d at 903 (citations omitted).  For purposes of establishing a *prima facie* case of retaliation, temporal proximity between the protected EEO activity and adverse action can support an inference of causation, but only when the two events are "very close" in time. *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)); *see also Singletary v. Dist. of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003) ("[T]his circuit has held that a close temporal relationship may alone establish the required causal connection.").  Although the Supreme Court has suggested that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone,

be too lengthy to raise an inference of causation, neither the
Supreme Court nor the D.C. Circuit has established a bright-line
three-month rule.  *See Clark Cnty. Sch. Dist.*, 532 U.S. at 273-
74; *Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir.
2012).  Instead, courts in this Circuit have evaluated the
specific facts of each case to determine whether inferring
causation is appropriate.  *See Hamilton*, 666 F.3d at 1358-59
(measuring time between filing of formal EEO complaint and
adverse employment action, which was just under three months,
and finding that a pattern of antagonism leading up to the
adverse action supported inference of causation).

Here, the time between Nguyen's initial EEO contact
(February 11, 2005) and his non-selection for the Chief Engineer
position (April 15, 2005) was approximately two months.
Further, the time between Nguyen's formal EEO complaint (March
24, 2005) and the non-selection was less than one month.  This
close temporal proximity is, therefore, sufficient for the Court
to infer a causal connection.  In addition, there is, at the
very least, a genuine issue of material fact as to whether any
member of the panel that selected Stephen Stump for the Chief
Engineer position in April 2005 was aware of Nguyen's EEO
activity.  The record reflects that the panel involved in rating
candidates for the selection included Paul Gross, although it
does not appear that Gross was involved in interviewing any of

the candidates.  *See* Def.'s Reply, Ex. 4, at 1.  Mr. Gross was,
however, listed as the ultimate selecting official.  *See id.* at
2.  The record also reflects that Mr. Gross was interviewed in
connection with Nguyen's 2005 EEO complaint, thus making it
plausible that Gross was aware of the complaint before the April
2005 selection of Stump.  *See* 2005 Transcript at 150-57.  The
Court therefore concludes that there is sufficient evidence in
the record to infer a causal connection between Nguyen's
protected activity and his non-selection for the Chief Engineer
position in order to demonstrate a *prima facie* case.  *See Cones*,
199 F.3d at 521.

Because Nguyen has demonstrated a *prima facie* case of
retaliation, the burden thus shifts to Defendant to assert a
legitimate, non-discriminatory reason for its action.  As noted
above, Defendant did not construe Nguyen's Complaint as alleging
retaliation based upon the selection of Stump as Chief Engineer.
Therefore, Defendant did not address this claim at all, let
alone offer any legitimate, non-discriminatory reason for its
action.  Accordingly, the Court finds that summary judgment is
not appropriate as to this claim.

## C.   Hostile Work Environment Claims

In both his Amended Complaint and his Complaint in case
number 10-1030, Plaintiff alleges only in passing that Defendant
"created a hostile work environment based on age" in violation

of the ADEA.  Am. Compl. ¶ 1; *see also* Compl., No. 10-1030, at
2.  Throughout his Amended Complaint, however, Plaintiff alleges
acts that can only be read as part of a hostile work environment
claim based on Plaintiff's race and national origin, in addition
to age.  *See, e.g.*, Am. Compl. ¶¶ 14-17 (alleging that Gross has
not assigned Nguyen a major area of responsibility, has stripped
Nguyen of substantive engineering work, has given Nguyen fewer
performance awards than other similarly situated Caucasian
engineers with less experience, and continues to exclude Nguyen
from major duties and responsibilities); *id.* ¶¶ 19-21, 28
(regarding Chief Engineer Dulai's comments about Vietnamese
people and his threat that Nguyen should look for a different
position).  Nguyen also alleges that Defendant has repeatedly
denied Nguyen promotions to higher grade positions for which he
was qualified, in favor of substantially younger, Caucasian
employees.  *See, e.g.*, *id.* ¶ 22.  Because Plaintiff is
proceeding *pro se*, the Court construes the allegations in his
complaints liberally to include claims for hostile work
environment based on race, national origin, and age.  The Court
concludes that Nguyen's allegations do not rise to the level of
a hostile work environment on any of those bases.

### 1.   Exhaustion and Unrelated Allegations

Defendant argues that Nguyen failed to exhaust many of his
hostile work environment claims and that other allegations

raised for the first time in his civil complaint are not reasonably related to his administrative claims.

Whatever impact *Morgan* may have had on other types of Title VII claims, there appears to be no confusion as to its holding regarding hostile work environment claims: plaintiffs may incorporate non-exhausted allegations into a hostile work environment claim so long as some allegations were exhausted and all of the allegations together form one hostile environment claim.  *See Morgan*, 536 U.S. at 115 (holding that for purposes of exhaustion, "[h]ostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct"); *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 107 n.10 (D.D.C. 2005).

In his 2005 EEO contact, Nguyen alleged the following as the basis of his continuing hostile work environment claim:

1.    On January 5, 2005, Dulai suggested that Nguyen leave his job and look for another position to avoid future adverse action;
2.    On January 5, 2005 and continuing to the present, Management continues to manipulate position qualifications and deny Nguyen's job experience to deny him assignments and advancement opportunities in favor of less experienced engineers;
3.    Management encourages the community to exclude Nguyen from important program reviews, the latest of which was the ISIS kick-off meeting at Kollmorgen on February 9, 2005.

*See* Def.'s SMF ¶ 16; 2005 ROI at 15-16.  In his 2007 contact, however, Nguyen did not allege a hostile work environment claim,

nor did he include any facts that could support such a claim. *See* 2007 ROI at 2-3, 18 (claiming continuing failure by PMS 435 to promote him to Chief Engineer position on three specific occasions).   Therefore, only allegations that form a part of the claims in Nguyen's 2005 complaint will survive.   The Court construes any allegations related to (1) Dulai's statements to Nguyen, (2) management's denial of assignments and advancement opportunities to Nguyen, and (3) exclusion of Nguyen from meetings/events to form part of those claims.[21]

By contrast, Plaintiff's allegations that, after being selected as Chief Engineer in 2007, Sayegh has not assigned additional SBIR projects to Nguyen, *see* Am. Compl. ¶ 49, cannot be said to form part of the same hostile work environment, nor are they "like or reasonably related to" the allegations raised in Nguyen's administrative complaint, *Akridge v. Gallaudet Univ.*, 729 F. Supp. 2d 172, 180-81 (D.D.C. 2010) (finding that plaintiff had not exhausted his administrative remedies with respect to his hostile work environment claim because it was not "like or reasonably related to" the single claim of discrimination for non-selection that plaintiff alleged in his administrative complaint).   In addition, because the administrative complaint described management's denial of

---

[21] Nguyen does not appear to allege that exclusion from any meetings or events forms the basis of the claims in either his Amended Complaint or his Complaint in case number 10-1030.

assignments and advancement opportunities as comprising "January 5, 2005 . . . to the present," the claims were insufficient to put the agency on notice that Nguyen was alleging a hostile work environment claim that encompassed decisions Gross may have made in 1998. *See Grosdidier v. Broad. Bd. of Governors*, 774 F. Supp. 2d 76, 99 (D.D.C. 2011) ("[Plaintiff's] formal complaint listed the dates of discriminatory conduct as extending from January 2007 to the present, meaning that the agency would not have had a basis to investigate [plaintiff's] claims . . . that occurred before January 2007."); *Patterson v. Johnson*, 391 F. Supp. 2d 140, 146 (D.D.C. 2005) (finding that untimely acts committed by supervisor were not related to claim of retaliatory reassignment by the same supervisor).  These allegations are thus untimely and cannot form part of Nguyen's hostile work environment claims.

### 2.   Plaintiff's Claims

To prevail on a hostile work environment claim, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006).  To determine whether a hostile work

environment exists, the Court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201 (citing *Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998)); *see also Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003) ("The key terms, then, are 'severe,' 'pervasive,' and 'abusive,' as not just any offensive of discriminatory conduct rises to an actionable hostile work environment."). The Supreme Court has made clear that the "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788. By adhering to these standards, the Court thereby "ensure[s] that Title VII does not become a general civility code" that involves courts in policing "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788 (internal quotation marks and citations omitted); *see also Clark Cnty. Sch. Dist.*, 532 U.S. at 271 (holding that "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are insufficient (citation omitted)). In addition, Courts in this District have routinely held that "hostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some

linkage between the hostile behavior and the plaintiff's membership in a protected class." *Na'im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009) (citing *Baloch*, 550 F.3d at 1201).

Plaintiff makes allegations regarding two potential sources of a hostile work environment: (1) insensitive statements made by Chief Engineer Dulai, and (2) management's denial of higher-level assignments and advancement opportunities to Nguyen, in favor of less experienced, Caucasian engineers.  The Court will address each in turn.

### a.   Statements Made by Dulai

Nguyen alleges that, "[o]n several occasions, Dulai spoke about the Viet Nam War and told Nguyen that Vietnamese people ought to be grateful for having a job at NAVSEA."  Am. Compl. ¶ 19.  Nguyen states that these comments revealed Dulai's prejudice towards Vietnamese people and were very upsetting to Nguyen.  *Id.*  According to Nguyen, Dulai made these comments "on and off" around the year 2001, and Nguyen believed he made these comments less than ten times.  *See* Def.'s MSJ, Ex. 11, Nguyen Dep. at 33-35.  In addition, Nguyen alleges that Dulai stated that, "in contrast to Asians, [Dulai] considered his racial identity [Indian Sikh] to be more like that of a Caucasian person."  Am. Compl. ¶ 20.  Nguyen asserts that "on many occasions," Dulai mocked the accent of another Vietnamese employee, and Dulai would contrast his own manner of speaking,

which had less of an accent.  *Id.* ¶ 21.  Finally, according to
Nguyen, in December 2004, Dulai "approached Nguyen privately and
threatened that the new Chief Engineer will target him with
harassment, lest Nguyen leaves his Assistant Chief Engineer
position for another position outside PEOSUB."  *Id.* ¶ 28.  Dulai
also offered to provide Nguyen a positive reference if he
applied for an outside position.  *Id.*

These allegations are insufficient to establish a hostile
work environment.  Allegations of disparaging remarks and other
negative comments do not sufficiently demonstrate a significant
level of offensiveness.  *See, e.g.*, *Harris*, 510 U.S. at 21
("[M]ere utterance of an . . . epithet which engenders offensive
feelings in a[n] employee does not sufficiently affect the
conditions of employment to implicate Title VII." (internal
quotation marks and citation omitted)); *George v. Leavitt*, 407
F.3d 405, 416-17 (D.C. Cir. 2005).  In *George*, the D.C. Circuit
held that statements by three employees over a six-month period
telling a plaintiff to "go back where she came from," separate
acts of yelling and hostility, and allegations that the
plaintiff was not given the type of work she deserved, were
isolated instances that did not rise to the level of severity
necessary to find a hostile work environment.  407 F.3d at 408-
09, 416-17.  Here, the Court cannot infer that Dulai's
statements that "Vietnamese people should be grateful for having

a job at NAVSEA" and his mocking of another Vietnamese individual's accent were so extreme and pervasive that they altered the conditions of Nguyen's employment.[22]  Instead, they constitute isolated incidents that simply do not rise to the level of a hostile work environment.  *See George*, 407 F.3d at 416-17; *Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 103-04 (D.D.C. 2010) (finding allegations that plaintiff's accent was criticized in front of others on more than one occasion, he was told he was easy to replace with an American, and was told that his supervisor would not hire other Africans were insufficiently severe and pervasive to constitute a hostile work environment).

Further, Nguyen offers no evidence from which a reasonable fact-finder could infer that Dulai's statement advising that Nguyen look for another job was hostile.  According to Nguyen's

_____

[22] Moreover, when asked about Dulai's comparison of himself to Caucasians, Nguyen responded, "I don't recall the situation, but it stuck in my mind that throughout he behaved like 'Yeah, I'm superior to you Vietnamese and people like that.'"  Def.'s MSJ, Ex. 11, Nguyen Dep. at 41.  According to Nguyen, "[Dulai] said . . . his culture is like the Greek culture, that he has white complexion people [sic], that he -- at one time, I believe we were talking about the -- some Greek wedding movie. And then he said '[y]eah. We do the same thing. We have dances, unlike the Asian, other Asian people. They don't have dances and things like that.'"  *Id.*  Nguyen's testimony about this conversation reveals only his subjective interpretation that Dulai's statements contained discriminatory animus.  Without more, this comment is insufficient to establish a severe or pervasive environment.  *See Ramey v. Potomac Electric Power Co.*, 468 F. Supp 2d. 51, 58 (D.D.C. 2006).

testimony, sometime in December 2004, Dulai called Nguyen aside and said: "Let me be a friend to you. If you want to avoid any hardship later on, any harassment later on, if I were you I would move to another job, I would apply for another job."  2005 Transcript at 78.  Dulai purportedly added that he would write Nguyen a good recommendation so that he could get hired somewhere else.  *Id.*  At most, this statement amounts to an "offhand comment[] [or] isolated incident[]," which did not amount to a discriminatory change in the terms and conditions of Nguyen's employment.  *Faragher*, 524 U.S. at 788.  Therefore, no reasonable jury could find that Dulai's statements were sufficiently severe that Nguyen's workplace was "permeated with discriminatory intimidation, ridicule, and insult."  *Harris*, 510 U.S. at 21 (internal quotation marks and citation omitted).

### b.  Denial of Assignments and Advancement Opportunities

Nguyen also alleges that management, in particular Mr. Gross, denied him desirable assignments and job advancement opportunities in favor of younger, Caucasian employees.  *See* Am. Compl. ¶¶ 17, 22; *see also* Pl.'s Opp'n at 5.

Nguyen points to no evidence suggesting that these denials were connected to Nguyen's race, national origin, or age.  Most importantly, Nguyen does not present sufficient evidence that these denials created a workplace that was "permeated with

'discriminatory intimidation, ridicule, and insult.'"  *Harris*,
510 U.S. at 21 (citation omitted); *see also Nurriddin v. Bolden*,
674 F. Supp. 2d 64, 94 (D.D.C. 2009) ("[T]he removal of
important assignments, lowered performance evaluations, and
close scrutiny of assignments by management [cannot] be
characterized as sufficiently intimidating or offensive in an
ordinary workplace context."); *Bell v. Gonzales*, 398 F. Supp. 2d
78, 92 (D.D.C. 2005) (finding that actions such as exclusion
from the informal chain of command, close monitoring of work,
missed opportunities for teaching, travel, and high-profile
assignments, and reassignment to another work unit did not
amount to a hostile work environment because "they cannot fairly
be labeled abusive or offensive").

Even construing the facts in the light most favorable to
Plaintiff, the Court finds that no reasonable jury could
conclude that the actions Plaintiff alleges were "sufficiently
severe or pervasive to alter the conditions of [his] employment
and create an abusive working environment." *Baloch*, 550 F.3d at
1201 (quoting *Harris*, 510 U.S. at 21).  Accordingly, summary
judgment in favor of Defendant is appropriate with respect to
Nguyen's hostile work environment claim.

**IV.   CONCLUSION**

For the foregoing reasons, the Court hereby **GRANTS IN PART
AND DENIES IN PART** Defendant's Motion for Summary Judgment.

Defendant's Motion for Summary Judgment is hereby **GRANTED** as to Plaintiff's discrete claims of discrimination under Title VII and the ADEA, Plaintiff's hostile work environment claims, and Plaintiff's retaliation claim as it applies to ASSEP funding. However, Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's retaliation claim based upon his April 2005 non-selection for the Chief Engineer position.  An appropriate Order accompanies this Memorandum Opinion.

**SIGNED:    Emmet G. Sullivan**
**          United States District Court Judge**
**          September 30, 2012**